CITIZENS & SOUTHERN NATIONAL BANK *v.* KONTZ *et al.*

132

No. 11948. December 4, 1937.

144

*J. H. Porter, Alston, Alston, Foster & Moise,* and *Wheeler & Kenyon,* for plaintiff.

*Bynum & Frankum,* for defendants.

GRAHAM, Judge. ■■ The plaintiff assigns error, in grounds 4 and 6 of its motion, upon the following extracts from the charge of the court: "I will instruct you, gentlemen of the jury, that if it was not the intention of the husband to delay and defraud his creditors, and the deed in question from Mr. Kontz to Mrs. Kontz was based upon a valid consideration, the transaction would be valid; provided that he was not insolvent at the time, and the deed was not voluntary. . . As I stated, in a claim case where the wife sets up title to the property levied upon, under a deed from her husband, and his creditor attacks the same upon the ground that it is fraudulent conveyance intended to hinder, delay, and defraud such creditor, the law does not put upon the creditor the burden of establishing fraud in the conveyance. On the contrary, it puts the burden upon the husband and wife. They must show that the transaction as a whole is free from fraud." Such charges are abstractly unsound. The Code, § 28-201, declares: "The following acts by debtors shall be fraudulent in law against creditors and others, and as to them null and void, viz.: . . 2. Every conveyance of real or personal estate, by writing or otherwise, and every bond, suit, judgment and execution, or contract of any description, had or made with intention to delay or defraud creditors, and such intention known to the party taking." Under this section a conveyance of real estate had or made with intention to delay or defraud creditors, and such intention known to the party taking, is invalid as to existing creditors. The charge of the court required the intention of the husband to be both to delay and defraud his creditor. The rule is, as to the intention, that it may be either to delay or defraud the creditor. There is a difference in the meaning of the words "delay" and "defraud." The words are not synonymous. *Monroe Mercantile Co.* v. *Arnold,* 108 *Ga.* 449, 457 (34 S. E. 176). As defined by Webster, delay means "to put off, postpone, defer; to prolong the time of or before; to procrastinate;" and by the same authority the word defraud is

defined as "to deprive of some right, interest, or property by a deceitful device; to cheat." Intent to defraud as used in the statute is distinct from intent to delay. Defraud involves moral turpitude. Delay involves no moral wrong. A debtor might be willing to delay his creditor in the collection of a debt. As was said in *Monroe Co.* v. *Arnold,* supra: "The debtor's motive in making a conveyance for the purpose of delaying creditors may be entirely honest. To illustrate: he might have reason to believe, for instance, that unless he takes some steps he will be pressed to the wall by suits of creditors, his property will be greatly sacrificed, and thus litigation would terminate, not only in injury to him, but to the creditors also; and he might further conclude that if he can arrange to postpone such action it would inure to the benefit of the creditors themselves by enabling him to continue his business longer, and thus realize an opportunity of paying his debts in full." Whereas the same debtor might be unwilling to beat or defraud his creditor of a penny due. The word defraud implies dishonesty. Delay does not. A jury might find that a debtor was of such character that while he might delay his creditor he would not defraud him. Yet the presence of either an intent to delay or defraud in the conveyance of a debtor, known to the party taking, voids the transaction. "The jury would be authorized to set aside the conveyance upon satisfactory proof of either. It is not necessary that the plaintiff prove intention both to delay and to defraud. The trial judge by his charge put upon the plaintiff a greater burden than is done by our statute. The jury might have believed from the evidence that the conveyance was made with intention to delay creditors, and yet, under the charge as given, could not find the conveyance fraudulent and void unless the evidence had authorized them to find that it was made with intention to both delay and defraud creditors. We think, therefore, that the court erred in the charge excepted to." *Evans* v. *Coleman,* 101 *Ga.* 152, 158 (28 S. E. 645). The acts voiding the conveyance should have been stated disjunctively. Stating them conjunctively imposed upon plaintiff a greater burden than the law does.

It is insisted that although the foregoing charge is incorrect, the court cured the error by also charging the jury that a conveyance made with intent to delay or defraud the creditor, and such in-

tention be known to the party taking, would void the deed. An examination of the whole charge discloses that the court did in another part of its charge state to the jury the correct rule; but nowhere therein did the court expressly withdraw from the consideration of the jury the incorrect charge or call attention of the jury to his misstatement of the rule. The jury should not be left to decide between conflicts in the charge. An erroneous and injurious charge is not cured by a correct statement of the law in another portion of the charge, wherein the incorrect charge is not expressly withdrawn from the jury and the attention of the jury called to the same. A charge containing two distinct propositions conflicting one with the other is calculated to leave the jury in such confused condition of mind that they can not render an intelligent verdict. Such requires the grant of a new trial. *Morris* v. *Warlick*, 118 *Ga.* 421 (45 S. E. 407); *Savannah Electric Co.* v. *McClelland*, 128 *Ga.* 87 (57 S. E. 91); *Grooms* v. *Grooms*, 141 *Ga.* 478 (81 S. E. 210); *Tietjen* v. *Meldrim*, 169 *Ga.* 678 (151 S. E. 349).

■ Ground 8 of the motion complains of the following charge: "Fraud, however, is never presumed, and the burden is upon the party alleging it to show its existence." Ordinarily such charge would be correct. However, in the case at bar the burden was on the claimant. The plaintiff was attacking the conveyance from the husband of claimant to her, on the ground that it was voluntarily made to delay or defraud the creditor. The transaction attacked being between the husband and wife, the onus was on them to show the transaction was fair. Code, § 53-505. The charge placed the onus on the plaintiff, and therefore was erroneous. In another portion of the charge the court correctly charged that the burden was on the husband and wife, but did not expressly withdraw from the jury the erroneous charge or call their attention thereto.

■ The plaintiff, in ground 9 of its motion, complains of the following charge: "In considering transactions between husband and wife, slight circumstances under certain conditions may be sufficient to satisfy the jury of existence of fraud. But in all such cases the bona fides of the transaction is to be determined by the jury." Such charge qualified and weakened the rule contained in the Code, § 37-706, as to fraud, as follows: "Fraud may not be presumed, but, being in itself subtle, slight circumstances may be

sufficient to carry conviction of its existence." The Code does not name any certain conditions where slight circumstances might be sufficient to satisfy the jury of existence of fraud; nor did the charge anywhere suggest any such conditions. It left the jury in a wilderness without a guide. It was confusing and misleading, and therefore erroneous. *Rowe* v. *Cole,* 176 *Ga.* 592 (168 S. E. 882).

■ In ground 10 of the motion exception is taken to the following charge: "The court further instructs you that if it was the intention of the husband to delay or defraud his creditors, and if such intention was not known to the wife, and she took the conveyance from her husband without notice of his intention or ground for reasonable suspicion, then the conveyance would be valid, although it was the intention of the husband to delay or defraud his creditors." This exception is well taken. The conveyance in question was voluntary, and, if made with intent to delay or defraud the creditor, was as to the creditor void, notwithstanding the wife may have had no notice of the intention to delay or defraud the creditor. A voluntary conveyance by a solvent or insolvent debtor, made with intent to delay or defraud his creditor in the collection of his debt, is void as to the creditor, irrespective of notice or grounds of suspicion to the party taking the conveyance. Hence a charge such as this, which makes it essential to void such deed that the donee should know of such intention, is error. *May* v. *Leverett,* 167 *Ga.* 205 (144 S. E. 778). In another part of the charge the court gave the correct rule, but did not expressly withdraw its erroneous charge from the jury or call their attention to the same.

■ Error is assigned, in ground 5 of the motion, on the following charge: "It does not matter even if a debtor, in preferring one creditor to another, entertains the purpose of hindering and delaying other creditors, if that purpose is unknown to the grantee in the deed." The charge was subject to the exception that it was unauthorized by the evidence. There was no evidence in the case on which to submit to the jury the rule that a debtor might prefer one creditor to another. The consideration expressed in the deed in question was love and affection. No witness testified the deed had any other consideration. In the absence of evidence to the contrary, the consideration expressed in the deed is to be presumed

to be the true consideration. Such charge was misleading and prejudicial, in that it authorized the jury to find that the wife was a creditor of the husband, and that he had a right to prefer her as such creditor, and therefore to find the deed valid. An instruction to the jury that is unauthorized by the evidence is erroneous, and, if it is not apparent that the jury could not have been misled thereby, is cause for new trial. *Culberson* v. *Alabama Construction Co.*, 127 *Ga.* 599 (56 S. E. 765, 9 L. R. A. (N. S.) 411, 9 Ann. Cas. 507) ; *Gaskins* v. *Gaskins*, 145 *Ga.* 806 (89 S. E. 1080).

■ Exception is taken, in ground 13 of the motion, to the admission, over timely objection, of the following testimony of the claimant: "That money was never returned to me from my own property, and when I received the deed in question it was the only return he ever made to me of anything outside of my living expenses. I sold one home for $25,000, and used only about $5,000, and the rest went into Judge Kontz's property, and the only return I ever received was this deed from Judge Kontz to me." Although it appears that the deed in question was voluntary and had no consideration except love and affection, and that the evidence objected to standing alone was insufficient to show a valuable consideration for the deed, yet such did not render the evidence inadmissible or subject to the objection that it was immaterial. The evidence was relevant on the bona fides of the transaction. *Central Bank & Trust Corporation* v. *Dennis*, 153 *Ga.* 793 (113 S. E. 177). It may have been better for the court to limit the purpose for which the evidence could have been considered; but no exception was taken to such failure.

■ Grounds 7 and 14 of the motion will be considered together, as each presents substantially the same question. In ground 7 exception is taken to the following charge: "The thing that you are to determine is whether or not the defendant in fi. fa., Ernest C. Kontz, was solvent at the time at which the deed of August 11, 1930, was made—was he solvent or not solvent at that time? That is one of the questions that you will have to determine under the instructions that I will give you." In ground 14 exception is taken to the following charge: "And one of the questions, gentlemen, for you to determine is whether or not at the time of the making of the deed of August 11, 1930, Ernest C. Kontz was insolvent. I will explain to you later the rules of law upon which you will

determine the question of insolvency." These excerpts from the charge, having been delivered without qualification, tended to withdraw from the consideration of the jury the contention of plaintiff that the deed was voluntary and made with intent to delay or defraud plaintiff in the collection of its debt, and therefore might have been confusing to the jury.

 In grounds 1, 2, 3, 11, and 12 of the motion the plaintiff insists that the verdict was contrary to the evidence and without evidence to support it. These grounds will be considered together.

First: It is insisted that the deed of August 11, 1930, from Ernest C. Kontz to his wife, the claimant, was a voluntary deed made without consideration when the husband was insolvent. On this issue there was evidence, while the same was weak on the question of solvency, from which the jury might have found the husband was solvent at the time of making the deed; but there was no evidence upon which to base a finding that the deed was for a valuable consideration. The deed recited a consideration of love and affection. The recited consideration in the deed, although subject to inquiry in the absence of evidence to the contrary, is presumed to be the true consideration. In the petition of plaintiff in Fulton superior court against the claimant and her husband, to set aside the deed, it was alleged the same was voluntary, that the consideration in the same was love and affection only; and that the deed was without any valuable consideration whatsoever. In separate verified answers to this petition both the husband and the wife admitted the truth of such allegations. On the trial of the claim case the claimant testified, in reference to the consideration of the deed, that she was living at Lakemont, Ga., when she received the deed of August 11, 1930, from her husband, conveying the property to her for love and affection; that there were no negotiations between her and her husband concerning the making of the deed; that she inherited some property from her grandmother and grandfather, and put it in a home in Atlanta before she married Ernest C. Kontz in 1898; that that money was never returned to her from her own property; that when she received the deed in question, it was the only return he ever made to her of anything outside of her living expenses; that she sold one home for $25,000 and used only about $5,000, and that the rest went into Judge Kontz's property, and the only return she received was the deed

from Judge Kontz to her, and it was not mentioned as being a consideration for that; that the money was never returned to her by Judge Kontz; that the deed came to her by mail from her husband; that she knew nothing about the making of the deed until she received it; that there had been no mention whatsoever of the deed before it was executed, that the deed was a surprise to her, but it was nothing more than right, although she had not been expecting it; and that she never took a note from her husband and had no written evidence of the debt, but he stated he would repay her. The husband testified as a witness for the claimant, but he failed to mention any valuable consideration for the deed. There was no evidence offered to show that the deed had any valuable consideration. Neither the wife nor the husband testified that it had any valuable consideration, or that the purpose of the deed was to prefer her as a creditor. Under the evidence the deed was voluntary.

Second: It is insisted that the verdict was contrary to the evidence, because the deed was voluntary and made with intent to delay or defraud the creditor. The husband, being indebted to the banks and unable to pay, and being pressed for security, with suit threatened, delivered to the plaintiff, late in January, 1930, a security deed dated December 31, 1929, to secure the payment of the notes evidencing the indebtedness, which were renewed for six months. This security deed did not include the Lakemont property. At the time of the delivery of the security deed an agreement giving him the right to sell parcels of the land in the security deed was executed. He attempted to sell various parcels, but did not succeed. The extension of time granted him expired. He asked the bank for further extension, because he had no way of paying the debt except out of the property. On August 1, 1930, he received notice from the bank of intention to file suit. He sent Mr. Campbell to the bank to intercede for him. On August 11, 1930, he received from the bank demand for the payment of the debt. On August 12, 1930, suit against him was filed. On December 18, 1930, there was a hearing on the demurrer to strike his answer. The answer was stricken. He asked for twenty days time within which to amend. Two days later, December 20, 1930, the deed dated August 11, 1930, conveying to his wife the Lakemont property, the property in question, was filed for record in the

clerk's office in Rabun County. On the trial of the claim case Ernest C. Kontz testified for the claimant: "At the time of making the deed on August 11, 1930, I had sufficient valuable property in Fulton County to more than equal the loan due the banks. My estimate would be that the value of other property owned by me at the time the deed was made, over and above that contained in the deed, was at least $150,000 to $175,000. There has been no active market for such property for the last few years. If sales should be forced on a depressed market, the result would be unconscionable ruin to the debtor. . . When suit was filed against me I naturally did not want my property taken when it was worth a great deal more than the debt, because it was not necessary. The property at Lakemont was not included in my deed to the bank, and there was no reason why my creditors should take it. The property included in the deed to the bank was worth between $250,000 and $300,000 at a fair market value, and there was no occasion for their wanting any other property. . . The aggregate sum of the two notes referred to in that deed amounted to $50,540. I got the money, but never paid it back. When the bank wanted repayment I thought they were pressing me unduly, as it was not an opportune time to insist on the money. When they pressed me unduly, I undertook to protect myself the best I could in a perfectly legal way." He also testified that at the time of making the deed to his wife his property conveyed by the security deed was sufficient to pay the debt due the bank, and that he was solvent and had no intention in making the deed to delay or defraud his creditors. Both he and his wife testified there was no agreement or negotiation between them leading up to the making of the deed, that she was not present when it was made, but that it was made in Atlanta, mailed to her, and that she was surprised when she received it.

Under the circumstances of the case and the testimony above quoted, a fair construction of the evidence is that at the time of the making of the deed to his wife he was being pressed for payment of his debt which he could not pay, and for which he could not sell his property other than the Lakemont property for a sufficient amount to pay the debt; that he thought the bank was unduly pressing him; that his property would be sacrificed, and that in order to protect himself against the collection of the debt out of

any property except that contained in the security deed he conveyed the Lakemont property to his wife. It is clear that he desired to put the Lakemont property beyond the reach of his creditor. As against his own testimony and the circumstances of his case, his statement that the deed was not made for the purpose of delaying his creditor is without probative value. The burden was on the husband and wife to show that the deed was not made to her for the purpose of delaying the creditor in the collection of its debt. The evidence was insufficient to carry this burden.

Third: It is insisted that the verdict is contrary to the evidence, because the claimant reconveyed the property in question to her husband for a purported consideration of love and affection, so that it would be subject to the debt. The wife may not bind her separate estate by any contract of suretyship or by any assumption of the debts of her husband, and any sale of her separate estate made to a creditor of her husband in extinguishment of his debt shall be absolutely void. Code, § 53-503. No contract of sale by a wife of her separate estate to her husband or her trustee shall be valid, unless the same shall be allowed by order of the superior court of the county of her domicile. § 53-504. The deed from the wife to the husband recited a consideration of love and affection. A wife may give her property to her husband, but a gift will not be presumed. The evidence to support it must be clear and unequivocal, and the intention of the parties must be free from doubt. § 53-506. A married woman may give her land to her husband, so as to be subject to his debts. A conveyance made for such purpose will be binding upon her, unless the same was a scheme or colorable transaction for her, though not nominally bound, to become surety for her husband's debt. *Hawkins* v. *Kimbrell,* 158 *Ga.* 760 (124 S. E. 351) ; *Glover* v. *Summerour,* 165 *Ga.* 513 (141 S. E. 211).

From the wife's side of the case as made by her testimony, the deed was clearly and unequivocally a gift to the husband. She testified that, without any negotiation on her part with the plaintiff, she reconveyed the land to her husband so that it would be subject to his debts. Under the testimony of the claimant, it was not a scheme or colorable transaction entered into by the creditor to make her property surety for her husband's debt, but, without any inducement on the part of the creditor and without any

communication or agreement with the creditor, she gave the property to her husband. She says her motive was to make it subject to his debts. She had a right to do so, and it was legal for her to make such conveyance. Her motive is immaterial. The wife may give her property to her husband so that he may use it to pay his debts. If she had given him the property without such motive, it would have been subject to his debts. In determining the case it is necessary to construe her testimony most strongly against her. Under her testimony the deed to her husband was a gift, which is authorized by the law, and is valid without the approval of the superior court. Having made a gift of the property to her husband, she could not thereafter repudiate it and claim the property when levied upon, contrary to her deed. Wherefore we conclude the verdict finding the property not subject was unauthorized by the evidence. For the reasons herein stated, it was error to overrule the motion for new trial.

*Judgment reversed. The Justices and Judges concur.*